IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAIGE McEWAN, <br><br> Plaintiff, <br><br> v. <br><br> WAUKEGAN POLICE OFFICER ROLANDO VILLAFUERTE; WAUKEGAN POLICE OFFICER JOSEPH BAYSINGER; Individually and as Employees/Agents of the City of Waukegan; and the CITY OF WAUKEGAN, <br><br> Defendants. | Case No. 20-cv-722 <br><br> Magistrate Judge Sunil R. Harjani |

## MEMORANDUM OPINION AND ORDER

Currently before the Court is Plaintiff's Motion to Compel [38]. Plaintiff's motion presents questions regarding the application of the psychotherapist-patient privilege to a police officer's fitness for duty evaluation. For the reasons explained below, the Court finds that the federal *Jaffee* privilege controls in this case, and that Defendant Villafuerte lacked the requisite expectation of confidentiality for the *Jaffee* privilege to attach to his fitness for duty evaluation. Moreover, to the extent that the federal psychotherapist-patient privilege protected Villafuerte's fitness for duty records, Villafuerte waived the privilege by submitting the documents in support of his application for pension disability benefits. The Court accordingly grants Plaintiff's motion and orders that Defendant City of Waukegan produce documents responsive to Plaintiff's Third Request for Production of Documents.

### Background

In this 42 U.S.C. § 1983 action, Plaintiff Paige McEwan alleges that Defendant Officer Villafuerte used unreasonable and unjustifiable excessive force when responding to a domestic

1

incident at a residential home in Waukegan, Illinois on February 3, 2019. Doc. [1]. ¶¶ 5, 18-21. According to the complaint, McEwan and her boyfriend, Asuncion Gomez-Guerrero, were sitting in a parked car when the police arrived. *Id.* ¶ 7. Defendant Villafuerte then purportedly approached the front of the car with his handgun pointed at Gomez-Guerrero, who was seated in the driver's seat. *Id.* ¶¶ 8-9. Gomez-Guerrero, according to the complaint, slowly moved the car into reverse and then forward, at which time Defendant Villafuerte stepped in front of the vehicle, placed his hand on the hood of the car, yelled obscenities, and discharged multiple shots through the front windshield. *Id.* ¶¶ 8-10. The shots fired by Defendant Villafuerte killed Gomez-Guerrero and caused the car to crash into a pole down the block. *Id.* ¶ 11. At this point, McEwan claims that Defendant Baysinger drove his squad car to McEwan's location, placed her into handcuffs, took her to the Waukegan Police Station, and interrogated her, instead of calling for an ambulance. *Id.* ¶¶ 13-16. McEwan additionally brings claims of intentional infliction of emotional distress against Defendant Villafuerte, failure to provide medical attention against both defendant officers, as well as *Monell* and indemnification claims against the City of Waukegan. *Id.*

Defendants generally deny McEwan's claims and assert various affirmative defenses, including qualified immunity, immunity under the Illinois Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/1-101 *et seq.*), and self-defense and defense of others, pursuant to 720 ILCS 5/7-5. Docs. [17, 18, 21].

At his deposition on December 17, 2020, Defendant Villafuerte testified that he had participated in a fitness for duty evaluation following his February 3, 2019 shooting of Gomez-Guerrero. Doc. [49] at 6. On December 22, 2020, McEwan propounded her third document request to the City of Waukegan, in which she asked for:

> 1. Any and all Fitness for Duty Evaluations sent from February 3, 2019 to the present regarding Defendant Officer Villafuerte.

2

>2. Any and all documentation including, but not limited to, any records or mental fitness evaluations that support any recommendation or diagnosis regarding Defendant Officer Villafuerte since February 3, 2019.
>
>3. Any and all Waukegan Police Department documents, reports, memorandum, handwritten notes, witness statements, sworn testimony, and any other materials regarding Defendant Officer Villafuerte including all recommendations regarding his fitness for duty.

Doc. [38-1]. On January 15, 2021, the City responded that it would not produce the requested documents because they are privileged pursuant to the Illinois Mental Health and Developmental Disabilities Confidentiality Act at 740 ILCS 110/1 *et seq*. *Id.* McEwan subsequently filed the motion to compel that is before the Court.

On March 1, 2021 and March 4, 2021, the Court requested that Defendants Villafuerte and City of Waukegan tender to the Court documents relating to Defendant Villafuerte's fitness for duty evaluation and his application for pension disability benefits. Docs. [50, 51]. The Court subsequently received those documents and conducted an *in camera* review.

## Discussion

McEwan moves the Court to compel the production of documents in response to her written discovery requests regarding Defendant Villafuerte's fitness for duty evaluations.[1] Doc. [38]. According to McEwan, the fitness for duty evaluations are relevant, discoverable, and covered by a protective order. *Id.* at 2. Specifically, McEwan argues that the evaluations could be pertinent

---

[1] McEwan's motion indicates that she is asking this Court for an order compelling Defendant Villafuerte to respond to her third set of document requests, but those requests were propounded to the City of Waukegan. The Court's order of production in this matter is therefore limited to the City of Waukegan. *See* Fed. R. Civ. P. 37(a)(3)(b)(iv) (allowing a party to move for an order compelling production where "a party fails to produce documents or fails to respond that inspection will be permitted – or fails to permit inspection – as requested under Rule 34").

3

to Defendant Villafuerte's motive, intent, and state of mind at the time of the shooting, and that Defendant Villafuerte waived any applicable doctor-patient privilege based on the combination of his deposition testimony, his disclosure of the duty of fitness evaluation to his employer, and his use of the duty of fitness evaluation records in connection with a separate pension disability proceeding. *Id.* at 3, 4-5. Both the City and Defendant Villafuerte filed response briefs in this case. Consistent with its discovery response, the City contends that Defendant Villafuerte's fitness for duty evaluation records are protected by the Illinois Mental Health and Developmental Disabilities Confidentiality Act at 740 ILCS 110/1 *et seq* ("MHDDCA"). Doc. [44]. Defendant Villafuerte similarly avers that McEwan's discovery requests invade the federal psychotherapist-patient privilege set out by the Supreme Court in *Jaffee v. Redmond*, 518 U.S. 1 (1996). Doc. [49].

The Court finds, for the reasons discussed below, that the federal *Jaffee* privilege controls this case. The *Jaffee* psychotherapist patient privilege is only established when the patient expects that the mental health records will remain secret. Here, there is evidence that Defendant Villafuerte knew his fitness for duty evaluation was not confidential, and that it would be shared with others. Further, to the extent that the *Jaffee* privilege applies to Defendant Villafuerte's fitness for duty evaluation, he waived the privilege with respect to any documents that he provided the City of Waukegan Police Department Pension Board in support of his disability application. As a result, the Court grants McEwan's motion and orders that the City of Waukegan produce documents responsive to Plaintiff's Third Request for Production of Documents in accordance with this opinion.

I. **The Federal Psychotherapist-Privilege vs. the Illinois MHDDCA**

The parties initially dispute which psychotherapist-patient privilege, state or federal, governs in this case. Rule 501 of the Federal Rules of Evidence instructs that federal common law

4

controls federal question cases, such as this 42 U.S.C. § 1983 action.[2] *See Jaffee v. Redmond*, 51 F.3d 1346, 1354, 1356 (7th Cir. 1995), *aff'd* 518 U.S. 1 (1996); *Scott v. Edinburg*, 101 F. Supp. 2d 1017, 1019 n.2 (N.D. Ill. 2000); *Beard v. City of Chicago*, 2005 WL 66074, at *6 (N.D. Ill. Jan. 10, 2005). Nevertheless, Defendant City of Waukegan urges this Court to recognize a more narrow privilege here based on the MHDDCA. The MHDDCA has strict requirements for the confidentiality of records, and only permits their disclosure when a patient introduces their mental condition as an element of the claim or defense, or where there is the consent of the patient (and further permits selective disclosure of the records without it constituting a general waiver). *See McGreal v. Ostrov*, 368 F.3d 657, 689 (7th Cir. 2004) ("The release of information for a limited purpose under the consent provision does not operate as a general waiver of the confidentiality privilege.").

While *Jaffee* controls in this case, it "does not mean, however, that federal courts should not consider the law of the state in which the case arises in determining whether a privilege should be recognized as a matter of federal law." *Mem'l Hosp. for McHenry Cty. v. Shadur*, 664 F.2d 1058, 1061 (7th Cir. 1981). Put another way, "although the federal common law of privileges is supreme, state privilege law may be considered by a court as instructive authority in determining the proper scope of the privilege." *Awalt v. Marketti*, 287 F.R.D. 409, 415 (N.D. Ill. 2012) (citations omitted).

---

[2] The federal psychotherapist-patient privilege applies even in a case where the Court exercises supplemental jurisdiction over state law claims. *See Jaffee*, 518 U.S. 1 at 5 (applying the federal common law of privileges, and not Illinois state law of privilege, to a case that included a claim arising under 42 U.S.C. § 1983 as well as a state-law claim under the Illinois Wrongful Death Act); *In re Pebsworth*, 705 F.2d 261, 262 (7th Cir. 1983) (holding that in nondiversity actions the contours and exceptions of privileges are matters of federal common law and that state-created principles of privilege do not control); *see also Doe v. Oberweis Dairy*, 456 F.3d 704, 718 (7th Cir. 2006) (applying the federal common law psychotherapist-patient privilege recognized in *Jaffee* to a case involving a federal claim arising under Title VII of the Civil Rights Act of 1964 as well as a host of supplemental state-law claims brought pursuant to Illinois state law).

As the Seventh Circuit stated in *Shadur*, "comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy." 664 F.2d at 1061 (internal quotation marks and citations omitted). In deciding whether to recognize the state privilege, a court should "weigh the need for truth against the importance of the relationship or policy sought to be furthered by the privilege, and the likelihood that recognition of the privilege will in fact protect that relationship in the factual setting of the case." *Id.* at 1061-62 (internal quotation marks and citations omitted).

The need for truth is universally vital in excessive force cases. In this case, McEwan seeks Defendant Villafuerte's fitness for duty evaluations for the purpose of learning about his state of mind and intent at the time of the shooting. In that way, the fitness for duty evaluations could speak to Defendant Villafuerte's state of mind that led to his killing of Gomez-Guerrero, evidence classified by the Supreme Court as relevant in excessive force cases. *See Kingsley v. Hendrickson*, 576 U.S. 389, 395 (2015). This case further involves an intentional infliction of emotional distress claim, which requires, under Illinois law, a showing that the defendant "intended to inflict severe emotional distress or knew that there was at least a high probability that his conduct would inflict severe emotional distress." *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 605 (7th Cir. 2006) (citation omitted). Thus, Defendant Villafuerte's statements to a mental health professional made in connection with his fitness for duty evaluation could provide evidence about Defendant Villafuerte's intentions on February 3, 2019, evidence imperative to McEwan's intentional infliction of emotional distress claim. Along those same lines, McEwan charges Defendant Villafuerte and Defendant Baysinger with knowing that she was in immediate need of medical attention following the car crash and killing of Gomez-Guerrero, so Defendant Villafuerte's statements to a psychotherapist about the sequence of events on February 3, 2019, from his

perspective, could support or rebut McEwan's claim that the defendant officers failed to provide her with needed medical attention. While McEwan could have sought the evidence about Defendant Villafuerte's mental state at his deposition—and likely did—his statements made to a medical professional closer to the time of the shooting could provide more reliable evidence of his state of mind on February 3, 2019. Thus, the Court finds that there is a substantial need for the evidence of Defendant Villafuerte's fitness for duty records in this case.

At the same time, the importance of the policy sought to be furthered by the MHDDCA is of great consequence too. The aim of the MHDDCA is "to preserve the confidentiality of the records and communications of persons who are receiving or who have received mental-health services." *Johnston v. Weil*, 241 Ill. 2d 169, 182, 946 N.E.2d 329, 338 (2011) (citation omitted). The MHDDCA "constitutes a strong statement by the General Assembly about the importance of keeping mental health records confidential and that confidentiality motivates people to seek needed treatment and is essential to the treatment process." *Sangirardi v. Vill. of Stickney*, 342 Ill. App. 3d 1, 16, 793 N.E.2d 787, 799 (2003) (citation omitted). Indeed, an individual in need of mental health services may be disinclined to even seek mental health treatment, let alone be honest and open with a treatment provider, if the individual is concerned that shared confidences "may be revealed to the whole world from the witness stand." *In re Aug., 1993 Regular Grand Jury (Med. Corp. Subpoena II)*, 854 F. Supp. 1392, 1397 (S.D. Ind. 1993) (internal quotation marks and citations omitted). As a result, the Court finds that the policy behind the MHDDCA furthers an important goal.

While it is clear that both the need for truth and the importance of the MHDDCA policy are weighty concerns in this case, recognition of a more narrow privilege based on the MHDDCA will not further the underlying policy behind the statute. *See Shadur*, 664 F.2d at 1061-62. As an

initial matter, Defendant Villafuerte did not willingly seek mental health treatment for purposes of his fitness for duty evaluation. Instead, he was ordered to meet with a doctor for purposes of assessing whether he was capable of performing his job. The City hired Defendant Villafuerte's doctor and intended to learn at least some information about Defendant Villafuerte's communications with the doctor. Thus, the MHDDCA policy of confidentiality for individuals *seeking* mental health treatment is not substantially furthered by its application here, as Defendant Villafuerte was ordered to speak to a mental health care provider and the outcome of those conversations were meant to be shared with the City. Furthermore, even if the MHDDCA is not considered by this Court, the *Jaffee* psychotherapist-patient privilege preserves and protects the common goal of encouraging people to seek mental health treatment. Thus, after weighing the MHDDCA concerns raised by the City under *Shadur*, the Court finds that the scope of the *Jaffee* privilege controls in this case.

**II.     Application and Waiver of *Jaffee* Privilege**

The Supreme Court recognized the federal psychotherapist-patient privilege in the landmark case of *Jaffee v. Redmond*, 518 U.S. 1 (1996). In *Jaffee*, another excessive force litigation, survivors of a man who had been fatally shot and killed by a police officer sued the officer and village under 42 U.S.C. § 1983 and the Illinois wrongful-death statute, Ill. Comp. Stat., ch. 740, § 180/1 *et seq*. (1994). *Id.* at 3-5. The shooting police officer pursued extensive counseling after the incident with a clinical social worker. *Id.* at 3-4. In the course of discovery, the plaintiff learned about the police officer's numerous counseling sessions and sought access to the social worker's notes for use in cross-examining the officer. *Id.* at 5. The defendants opposed the discovery, arguing that the information was protected against involuntary disclosure by a psychotherapist-patient privilege. *Id.* The district judge rejected the defendants' argument, but the

8

defendants nevertheless refused to disclose the contents of the police officer's counseling sessions. *Id.* At the conclusion of the trial, the district judge instructed the jury that it could hold the defendants' refusal to disclose the treatment records against defendants and presume that the contents of the therapist's notes would have been unfavorable. *Id.* at 5-6. The jury subsequently awarded the plaintiff $45,000 on the federal claim and $500,000 on her state-law claim. *Id.* at 5. On appeal to the Seventh Circuit, the Court of Appeals recognized the psychotherapist-patient privilege, subject to a balancing test, and reversed and remanded for a new trial. *Id.* at 6.

On appeal, the Supreme Court largely agreed with the Seventh Circuit. Because the Supreme Court found that a psychotherapist-patient privilege would "serve a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth," the court held that "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence," noting that "like other testimonial privileges, the patient may of course waive the protection." *Jaffee*, 518 U.S. at 15, 15 n.14 (internal quotation marks and citations omitted). However, the Supreme Court parted with the Seventh Circuit in terms of the need for a balancing test. *Id.* at 17. According to the *Jaffee* Court, "[m]aking the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege." *Id.* Ultimately, the court held that the conversations between the officer and her therapist, and the notes taken during their counseling sessions, were protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence. *Id.* at 18.

Defendant Villafuerte contends that *Jaffee* is directly applicable and highlights the need for police officers to seek confidential mental health treatment. Doc. [49] at 3, 5-6. *Jaffee*, however,

9

is not on point. *Jaffee* was not intended to protect an employee's compelled consultation with a psychologist for purposes of preparing an evaluation to be communicated to an employer as to the employee's fitness for duty. In *Jaffee*, the police officer affirmatively and on her own, pursued extensive counseling for the purposes of obtaining mental health treatment. The treatment was not for her employer's benefit, and the officer in *Jaffee* had no reason to think her counseling sessions would not remain secret. Whereas Defendant Villafuerte was ordered by his employer to report to a psychologist for a fitness for duty evaluation, an evaluation meant to be communicated to his employer.

Along those same lines, courts assessing the *Jaffee* privilege in the fitness for duty evaluation context have found the privilege not established where the police officer did not have an expectation of confidentiality. In *Scott v. Edinburg*, another action arising from a shooting by a police officer, the officer was informed before meeting with a psychologist for a fitness for duty evaluation that "the interviews with him and the testing results would be reviewed with [the Village police chief] as they pertained to the referral questions" and that the psychologist's "written report and oral testimony might be subpoenaed in a civil litigation lawsuit." *Scott v. Edinburg*, 101 F. Supp. 2d 1017, 1020 (N.D. Ill. 2000). The officer in *Scott* further demonstrated his knowledge that the information could be shared throughout his conversations with the psychologist by saying things like "this is not confidential." *Id.* The court found, after analyzing other fitness for duty cases, that "[t]he consistent thread that runs through all of these cases is that the threshold requirement for the existence of the psychotherapist patient privilege is that there be an expectation by the patient that the communications with the psychotherapist will remain with the psychotherapist and will not be disclosed to others." *Id.* Because the officer in *Scott* "embarked on the consultation fully aware that what he said would not be confidential, and would be shared

with others," including the village police chief, and potential future litigants, there was no expectation of confidentiality, and the privilege was never established. *Id.* The *Scott* Court further found that because the fitness for duty evaluation was, in fact, shared with the police chief, the mayor, and members of the board of trustees for the village, any privilege was thereby waived. *Id.* at 1020-21. Other courts have echoed the holding from *Scott* that the police officer's expectation of confidentiality is required for the *Jaffee* privilege to be established. *See Barmore v. City of Rockford*, 09 C 50236, 2012 WL 1660651 (N.D. Ill. May 11, 2012); *Brackin v. Anderson*, No. 1:06-CV-727-SEB-VSS, 2007 WL 129044, at *2 (S.D. Ind. Jan. 12, 2007); *Smith v. City of Plano*, 01 C 7111, 2002 WL 1483902 at *2 (N.D. Ill. July 9, 2002).

  Here, Defendant Villafuerte, like the police officer in *Scott*, did not have an expectation of privacy with respect to his fitness for duty evaluation. The Court learned from its *in camera* review of documents produced by the City that the clinical psychologist who performed Defendant Villafuerte's fitness for duty evaluation warned Villafuerte that the evaluation was not confidential and that it was conducted for the purpose of determining whether Villafuerte represented any sort of threat to the health, safety, and welfare of himself, his co-workers, supervisors, or the public in general. The documents tendered to the Court further demonstrated that the fitness for duty evaluation was a consultation, not a treatment or provision of clinical services, and that the consultation was intended to be reviewed by his police department. The documents show that Defendant Villafuerte understood and agreed to the conditions of the evaluation, as explained by the psychologist, prior to the evaluation. Villafuerte further signed a form allowing the psychologist to release a copy of the fitness for duty report to the chief of the police department, as well as various other consent and release forms. The Court therefore finds that the *Jaffee* privilege does not protect Villafuerte's fitness for duty evaluation, as Villafuerte "embarked on the

11

consultation fully aware that what he said would not be confidential, and would be shared with others." *Scott*, 101 F. Supp. 2d at 1020.

Defendant Villafuerte insists that the psychotherapist-patient privilege attached in this case because "it was Defendant Villafuerte's understanding that the substance of the evaluation and related reports would be disclosed solely in the context of evaluating his ability to return to duty." Doc. [49] at 8. But that statement simply reinforces the Court's finding that Defendant Villafuerte knew his fitness for duty evaluation and related reports would be disclosed.

Defendant Villafuerte further cites to inapposite cases from other jurisdictions in support of his claim that he maintained the needed expectation of confidentiality in this case.[3] For instance, in *Williams v. District of Columbia*, Civ. A. 96–0200 1997 WL 224921, *2 (D.D.C. April 25, 1997), the court held that a police officer had the requisite expectation of confidentiality for the *Jaffee* privilege to apply where the police department's fitness for duty policy was for the psychiatrist to report back to the police department with a simple "yes or no," without disclosure of any confidential communications. *Id.* at *3. "Most importantly," as noted by the *Williams* Court, "the psychiatric records of the officer are kept private." *Id.* Similarly, in *Caver v. City of Trenton*, 192 F.R.D. 154 (D.N.J. 2000), another case cited by Villafuerte, a police officer maintained his expectation of confidentiality where the outside health care provider hired by the police department only communicated a "pass" or "fail" result. *Id.* at 162. These cases are distinguishable because the police officers in those cases understood that the substance of their discussions would remain confidential, while the psychologists simply provided yes/no/pass/fail opinions regarding fitness

---

[3] Defendant Villafuerte's citation to the in-circuit case of *Olson v. Cutler*, No. 04 C 50474, 2006 WL 8462237 (N.D. Ill. Jan. 9, 2006), fares no better. In *Olson*, the plaintiff, who was moving to compel the production of a police officer's mental health records, provided no evidence that the police officer disclosed any mental health records to his employer or used his mental health records for any subsequent proceedings. *Id.* at *3. Defendant Villafuerte's fitness for duty report, by contrast, was provided to the police department, and Villafuerte used the report in support of his disability application.

12

for duty. Importantly, the substantive information in those cases was kept confidential. Here, the Court knows from its *in camera* review that Villafuerte knew his fitness for duty evaluation was not confidential. The Court also knows from that review that Villafuerte's fitness for duty evaluation report was, in fact, fully disclosed to the City of Waukegan. Thus, Villafuerte's citations to *Williams* and *Caver* are unavailing.[4] Villafuerte did not have the requisite expectation of confidentiality, and the *Jaffee* privilege did not attach to his fitness for duty evaluation.

Even if the *Jaffee* privilege did shield Villafuerte's fitness for duty evaluation, Villafuerte waived the privilege when he used the report in an application for pension benefits. *See* Doc. [49] at 8; Doc. [38] at 1; Doc. [45] at 2. For example, in *Mukes v. City of Milwaukee*, the court held that a former City of Milwaukee police sergeant waived the psychotherapist-patient privilege with respect to mental health records that he voluntarily disclosed to the City of Milwaukee Employees' Retirement System in support of his disability application. No. 13-CV-1268-PP, 2015 WL 3823887, at *5 (E.D. Wis. June 19, 2015). The waiver finding was the same in the case of *J.M. v. Milwaukee*. There, a plaintiff in a civil rights case subpoenaed the City of Milwaukee Employees' Retirement System for the disability claim file of a defendant officer. No. 16-CV-507-JPS, 2016 WL 7264781, at *1 (E.D. Wis. Dec. 15, 2016). The defendant officer argued, per *Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122, 1126-27 (7th Cir.1997), that the Seventh Circuit recognizes selective waiver of the psychotherapist-patient privilege. *Id.* at *2. Put another way, the defendant officer believed that his disclosure of mental health records for the limited purpose of applying for

---

[4] Defendant Villafuerte's reference to *James v. Harris Cty.*, 237 F.R.D. 606 (S.D. Tex. 2006) also misses the mark. In *James*, the court found that a police officer who engaged in mandatory post-shooting counseling sessions had a reasonable expectation of privacy in the substance of those sessions, as the officer only authorized the disclosure of the fact that he had been referred to counseling and his attendance of the sessions. *Id.* at 612. The officer had, moreover, been informed at the beginning of his sessions that their communications would remain private, and the social worker submitted no counseling records relating to the counseling to the police department. *Id.* *James* does not fit the facts of this case because Villafuerte was informed that his fitness for duty evaluation was not confidential and would be disclosed to others.

13

benefits did not waive the privilege with respect to the world at large. The *J.M.* Court disagreed, holding that the police officer's knowing disclosure of healthcare information, "including communications potentially protected by the psychotherapist-patient privilege, to a third-party . . . surrendered the privilege and opened the door to the plaintiffs to obtain the disability claim file." *Id.* at *3 (citation omitted).

As in *Mukes* and *J.M.*, Defendant Villafuerte cannot disclose his mental health treatment records to third parties offensively in order to obtain benefits and then invoke the psychotherapist-patient privilege defensively in litigation. But that is the exact position that Defendant Villafuerte and the City are taking, and it is without merit. The Court's *in camera* review of documents revealed that Defendant Villafuerte submitted his fitness for duty evaluation and other medical records in support of his application for disability pension benefits. The Court therefore finds that the psychotherapist-patient privilege is waived with respect to the records disclosed to the City of Waukegan Police Department Pension Board.

In sum, the *Jaffee* privilege was not activated here with respect to Defendant Villafuerte's fitness for duty evaluation, as he did not have an expectation of confidentiality with respect to the evaluation. Defendant Villafuerte further waived any applicable *Jaffee* privilege with respect to the mental health treatment records he voluntarily disclosed to the City of Waukegan Police Department Pension Board. The Court consequently orders that the City of Waukegan produce the fitness for duty evaluation report and any related mental health records in its possession, custody, or control.

## Conclusion

For the reasons stated above, Plaintiff's Motion to Compel [38] is granted. Defendant City of Waukegan shall produce the fitness for duty evaluation report and any mental health records in its possession, custody, or control concerning Defendant Villafuerte by March 15, 2021.

**SO ORDERED.**

Dated: March 10, 2021

Sunil R. Harjani
United States Magistrate Judge